UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
and ALICIA FARRAN,

               Plaintiffs,

v.

FORMEL D USA, INC.,

               Defendants.

_____/

Case No. 23-11479

Shalina D. Kumar
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**ORDER GRANTING IN PART, DENYING PART, AND HOLDING IN ABEYANCE IN PART MOTION TO COMPEL (ECF No. 20) and GRANTING IN PART MOTION FOR SPOLIATION SANCTIONS (ECF No. 28)**

This case is before the Court on the Equal Employment Opportunity Commission's ("EEOC") motions to compel and for spoliation sanctions. (ECF Nos. 20, 28). Discovery matters were referred to the undersigned. (ECF No. 11). The parties narrowed the issues (ECF No. 42) and the Court heard argument on both motions on September 3, 2024.

During argument, the parties confirmed that Issues 4, 5, and 7 in the joint statement of unresolved issues have been resolved. The remaining disputes are addressed here.

A.     <u>General Discovery Principles</u>

Parties may obtain discovery related to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26.  Information within this scope of discovery need not be admissible in evidence to be discoverable.  *Id.*  "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive."  *Superior Prod. P'ship v. Gordon Auto Body Parts Co*., 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007)).  A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  Fed. R. Civ. P. 37.

B.    Motion for Spoliation Sanctions (ECF No. 28)

The EEOC accuses Formel D of failing to preserve emails, laptops, and cellular telephone data of four custodians—Stadie, Klingler, Thompson and Littleton, and this failure prejudices the EEOC and Plaintiff.  Stadie's and Klingler's work cellular telephones and laptops are no longer available.  Thompson

2

and Littleton's emails and their cellular telephones and laptops are also no longer

available. Thompson and Littleton are arguably the most important of the four—

both were Plaintiff's supervisors. Plaintiff accuses Littleton of sexual harassment

and complained to Thompson about it. The EEOC has no email or text

communications between them to know whether they spoke about Plaintiff's

complaint or whether there was work available to her. As a sanction, the EEOC

seeks the following:

- Defendant provides to EEOC copies of litigation hold notices relating to Farran, dates and recipients of the notices, kinds and categories of information the employees were instructed to preserve and collect, and any actions employees were instructed to take;

- Defendant shall retain a forensic examiner to determine the timing and cause of the missing ESI and whether it can be recovered; and

- The Court allows the EEOC to take a Rule 30(b)(6) deposition regarding the missing ESI at Defendant's expense.

(ECF No. 28, PageID.290). The EEOC seeks these sanctions under Fed. R. Civ. P.

37(e)(1).

"Spoliation is the destruction or significant alteration of evidence, or the

failure to preserve property for another's use as evidence in pending or reasonably

foreseeable litigation." *Billiter v. SP Plus Corp.*, 329 F. Supp. 3d 459, 465-66

(M.D. Tenn. 2018). Federal courts may address spoliation by using the "wide

array of tools to manage the discovery process, some provided by the Federal

Rules of Civil Procedure, some stemming from their inherent power 'to achieve the

3

orderly and expeditious disposition of cases.'" *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 2018 WL 1542040, *10 (M.D. Tenn. Mar. 29, 2018) (*EPAC I*) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).  The Sixth Circuit directs courts to "consider incidences raising spoliation questions on a case-by-case basis, considering the purposes of a spoliation sanction and the factors for determining whether one should be imposed." *Adkins v. Wolever*, 692 F.3d 499, 506 (6th Cir. 2012).

The starting point is "whether and when a duty to preserve arose."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  Rule 37(e) incorporates the common-law "duty to preserve relevant information when litigation is reasonably foreseeable."  *Id.*  This duty "arises no later than when a lawsuit is filed but may be triggered earlier than the filing of the complaint depending on the particular circumstances." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 468 (E.D. Pa. 2020).

If a duty to preserve was triggered, next is whether the party took reasonable steps to preserve the data.  Rule 37(e) only authorizes remedial measures if a "party failed to take reasonable steps to preserve" ESI that it had a duty to preserve.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  To determine whether a party took reasonable steps to preserve lost evidence in a particular case, courts should consider the party's sophistication with respect to

litigation, level of control over the lost evidence, resources, and any evidence of the routine, good-faith operation of an information retention system. *Id.* "Perfection" is not the standard. *See Hargis v. Overton Cnty., Tenn.*, 2023 WL 8604139, at *11 (M.D. Tenn. Dec. 12, 2023); Fed. R. Civ. P. 37(e) advisory committee's note to the 2015 amendment ("Due to the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all relevant electronically stored information is often impossible.").

Even when a duty to preserve is triggered but the information is lost because of failure to take reasonable preservation steps, sanctions should not be issued if the information can be recovered through additional discovery. Fed. R. Civ. P. 37(e) advisory committee's note to the 2015 amendment. If the evidence cannot be restored, then the Court determines whether some sanction is warranted. Subsection (e)(1) contains no "intent" requirement—it requires only the loss of information and prejudice to the moving party, in which case the court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). "The court has broad discretion in crafting spoliation sanctions under Rule 37(e)(1)." *Kean v. Brinker Int'l, Inc.*, 2024 WL 1815346, at *8 (M. D. Tenn. Apr. 25, 2024) (quotation omitted). "Prejudice" can be "properly understood as a party's ability to obtain the proofs necessary for its case . . . which is another way

of saying the loss of ESI could negatively impact a party's ability to make its case, or prejudice that party because of the loss of information." *Konica Minolta Bus. Sols., U.S.A. Inc. v. Lowery Corp.*, 2016 WL 4537847, *3 (E.D. Mich. Aug. 31, 2016).  The judge has discretion to determine how best to assess prejudice, given that it may be unfair to require the moving party establish prejudice without knowing the content of the lost ESI, depending on the circumstances. *See Int'l Unions, Sec. Police & Fire Pros. of Am. v. Maritas*, 2022 WL 17828378, at *3 (E.D. Mich. Sept. 22, 2022) (quoting Rule 37 2015 Advisory Comm. Notes).

Defendant had a duty to preserve the ESI of individuals involved in the alleged harassment or retaliation and the investigation as early as August 28, 2018, but no later than September 7, 2018.  On August 28th, Plaintiff texted Stadie that she was contacting her lawyer about not being called back to work.  Stadie forwarded the complaint via email to the human resources director.  (ECF No. 28, PageID.285).  On September 7, 2018, Plaintiff emailed two persons in Defendant's human resources department asking about why there had been no work for her and to inform them of unwanted and inappropriate sexual advances from one of her supervisors.  (ECF No. 28-11, PageID.423).  Between September 7 and September 10, 2018, Defendant sought legal advice in anticipate of potential litigation related to the complaints of harassment against Littleton.  (*See* ECF No. 20-10,

Defendant's Privilege Log).  Defendant does not argue that its duty to preserve was triggered on a different date.

Rule 37(e) only authorizes remedial measures if a "party failed to take reasonable steps to preserve" ESI that it had a duty to preserve.  Perfection not required.  "[T]he routine, good-faith operation of an electronic information system" presents a relevant consideration in evaluating whether a party failed to take reasonable steps to preserve information." *Frenchko v. Monroe*, 672 F. Supp. 3d 421, 473 (N.D. Ohio 2023).

Defendant insists it took reasonable measure to preserve the ESI.  Defendant says there was a backup system failure resulting in loss of Thompson's and Littleton's emails.  Defendant's counsel informed Plaintiff's counsel about the loss.  (ECF No. 35, PageID.479-80).  The accounts were not deleted by an employee, so it is impossible to know when they were deleted.  At the hearing, counsel explained that cellular telephones and laptops are unavailable for these four individuals because Defendant does not have a policy of preserving employee's telephones or laptops.  These items are either returned to the vendor or are overwritten and used by the next employee.  In any event, information on laptops is stored on the servers, so the laptops themselves are unnecessary.  (*Id.* at PageID.489-90).  There is no admissible evidence in the record supporting Defendant's position.

The EEOC is satisfied that it can obtain information stored on laptops via the server.  Because laptop data has been preserved, except for Thompson's and Littleton's emails, the Court does not consider it lost.

The Court cannot say that Defendant took reasonable steps to preserve text messages from the human resources personnel (Stadie and Klingler) and the two employees directly involved in the harassment or investigation (Thompson and Littleton).  The record shows no attempt to preserve cellular telephone data. Defendant's lack of a policy to preserve cellular telephone data does not absolve it of responsibility to preserve ESI under the federal rules.  "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y 2003).  The same is true for ESI.  As late as September 7, 2018, Defendant anticipated litigation and thus had a duty to preserve telephone communications from these key custodians.

As for the lost emails, operation of an electronic information system is one consideration in deciding whether Defendant took reasonable steps to preserve the ESI.  Discussed at length below is Defendant's method of preserving emails on a server in Germany.  Saving emails on a server is a reasonable and usually effective step at preserving them.  Defendant cannot explain why Thompson's and

8

Littleton's emails were lost during a shift in cloud storage while other email accounts were preserved.  It is understandable that the EEOC is suspicious of the loss of the two most key persons in Plaintiff's claims.

Defendant asserts that the EEOC has conducted no discovery to meet its burden to show that reasonable steps were not taken, (ECF No. 35, PageID.489-90), but cites no authority placing the burden entirely on the EEOC to show reasonable steps were not taken.

The parties would have done well to better establish the burden issue.  The Federal Rules of Civil Procedure are silent about which party bears the burden of proving the reasonableness of the steps to preserve ESI.  Some courts give the burden of proof to the party with better access to the information—the party who lost the ESI.  *See Hollis v. CEVA Logistics, Inc.*, 603 F. Supp. 3d 611, 621 (N.D. Ill. 2022).  Other courts would place the burden on the party moving for sanctions. *See, e.g.*, *Williford v. Carnival Corp.*, 2019 WL 2269155, at *11 (S.D. Fla. May 28, 2019).  The parties here did not adequately brief the issue of who carries the burden.

There is not enough evidence to determine whether reasonable steps were taken to preserve the emails, no matter who should have the burden.  This finding is crucial because remedial measures are authorized only if reasonable steps were not taken.  Because the Court concludes that reasonable steps to preserve the

9

cellular telephone data were not taken, remedial measures are warranted to cure that lost data, so the analysis continues, but only as to the lost cellular telephone data.

Plaintiffs are prejudiced by the loss.  A finding of prejudice requires "an evaluation of the [lost] information's importance in the litigation."  *Courser v. Mich. House of Representatives*, 831 F. App'x 161, 187-88 (6th Cir. 2020) (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). Text messages between Stadie and Klingler or otherwise to and from Stadie and Klinger could reveal relevant information, such as whether Defendant withheld work from Plaintiff in retaliation for her complaints, or perhaps information making the complaint of harassment more or less likely true.[1]  Text messages between Thompson and Littleton are just as relevant, if not more crucial, to the claims.

Even on a showing of prejudice, Rule 37(e)(1) directs courts to order as a remedy "measures no greater than necessary to cure the prejudice."  The EEOC brought its motion under Rule 37(e)(1) instead of Rule 37(d)(2) which allows for more serious sanctions on a finding of intent to deprive another party of the ESI.

---

[1] It takes little effort to say that emails between Thompson and Littleton, the two most central individuals to the claims, are relevant, and their loss prejudices Plaintiffs.  The Court does not go so far as to make this finding because the question of reasonable steps remains.

10

The first category of curative measures the EEOC seeks involves the litigation hold letter, which Defendant has produced or agreed it would produce so long doing so does not waive attorney-client privilege.  Aside from the letter itself, the EEOC wants the date(s) of the litigation hold letter and the names of all the recipients, the kinds and categories or information and data Defendant's employees were instructed to preserve and collect, and any specific actions Defendant's employees were instructed to take based on the litigation hold notices.  (ECF No. 28, PageID.290).  Defendant argues that the communications between counsel and employees are attorney-client privileged.  (ECF No. 35, PageID.490-91).

Though the litigation hold letter and accompanying information is not necessarily targeted at curing the loss of the text messages, the Court nonetheless will require production of some of the requested information.

Defendant's privilege argument stretches the attorney-client privilege. "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct."  *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (quoting *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)).  The relevant test is "whether the predominant purpose of the communication is to render or solicit legal advice." *Cooey v. Strickland*, 269 F.R.D. 643, 650 (S.D Ohio 2010).  The Court accepts that Defendant's counsel's litigation hold letter to Defendant's employees is a

11

communication between client and attorney.  That said, the "predominant purpose of that communication was to give recipients forceful *instructions* about what they must do, rather than *advice* about what they might do." *Bagley v. Yale Univ.*, 318 F.R.D. 234, 240 (D. Conn. 2016) (emphasis in original).

Even if the litigation hold notices were not discoverable, "particularly when a party has made an adequate showing that the material is protected by the attorney-client privilege or the work product doctrine, litigation letters may be discoverable upon a finding of spoliation." *United Illuminating Co. v. Whiting-Turner Contracting Co.*, 2020 WL 8611045, at *3 (D. Conn. Oct. 30, 2020) (collecting cases).

It was Defendant's burden to establish that the privilege applies, and its failure to marshal case law in support of its position makes crediting the assertion difficult.  Even had it made the requisite showing, the Court would nonetheless find the letters discoverable because of cellular telephone spoliation.

The Court will require Defendant to produce the litigation hold notice, the date the notice was sent to employees, and the names of all recipients of the notice **within 14 days of this Order**.  Once the EEOC has the list of names, it may inquire into the actions taken in response to the notice.  At this time, the Court does not compel disclosure of any other communications between Defendant's employees and counsel concerning the litigation hold notice.  That said, if

12

information surfaces that there was intent to destroy evidence, the ruling may change.

The Court will not require Defendant to pay the cost of the last two requested remedial measures—retaining a forensic examiner and deposing Defendant's corporate witness about spoliation, because these measures exceed what is necessary to cure the prejudice.  Requiring Defendant to shoulder these costs is not calculated to cure the prejudice of the missing text messages—a cure will more likely come from emails discussed below.[2]

The motion for spoliation sanctions is **GRANTED IN PART, DENIED IN PART**.  As EEOC explained, it needs to recreate some of the lost communications, so it increased the number of custodians and search terms it wants searched to try to get the same kind of information from existing emails.  Given the lost evidence, the Court takes a broader view of document discovery addressed below.

C.    Motion to Compel (ECF No. 20)

There are several issues to address: (1) whether nine emails were properly withheld as attorney-client privileged, (2) whether Defendant is engaging in self-

---

[2] Even if the Court was satisfied that Defendant did not take reasonable steps to preserve Thompson's and Littleton's emails, the EEOC would only be entitled to "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).  Requiring Defendant to retain a forensic examiner to determine when and why the emails were lost does not cure the loss of the emails.  Requiring Defendant to pay for its corporate deposition to question the deponent about spoliation will not cure the loss of emails.  Those measures might be more appropriate if the EEOC moved for spoliation sanctions under Fed. R. Civ. P. 37(e)(2), which it has not.

collection of electronically stored information ("ESI") in violation of Fed. R. Civ. P. 26(g) and the parties' stipulated ESI order, and (3) various documents discovery issues.

    1.     Attorney-Client Privilege

In briefing, the EEOC disputes responses to nine discovery requests covering 33 documents; at the hearing the parties said the dispute concerns nine emails.  Three of the documents are emails between Defendant's Vice President, Technical Director, and a Human Resources Director regarding Plaintiff's complaint of sexual harassment and retaliation.  EEOC argues that emails not involving an attorney are not protected.  (ECF No. 20, PageID.166-67).  There is no thorough argument on the remaining six emails.

The Sixth Circuit has held that the criteria below must be satisfied in order to hold that a communication is protected under the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).  Communications between non-attorney corporate employees can be privileged if "made in order to secure legal advice from counsel."  *Boltz v. United Process Controls*, 2017 WL 9938047, at *6 (S.D. Ohio

14

June 23, 2017) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394, (1981)).

"Thus, to establish that . . . email between two non-attorneys is protected under the attorney-client privilege, Defendants must prove that the 'dominant intent' of the communication was to secure 'legal advice from [a] lawyer.'" *Id.* (citations omitted).

The EEOC argues that the first three entries in Defendant's privilege log are the emails between non-attorneys, yet the first two of these entries is an email to the attorney or an email exchange with an attorney.  (*See* ECF No. 20-10, PageID.213).  Defendant says even if an attorney were not involved, it asserted attorney work-product privilege as well.  (ECF No. 22, PageID.259).

The Court will review the emails *in camera* in accordance with the legal standards addressed above.  Defendant must email the nine contested emails and the privilege log to law clerk Aidan Maraachli **within 14 days** of this Order. Because of this outstanding issue, the motion to compel at ECF No. 20 will not be fully resolved by this Order.

2.      Self-Collection of ESI

Earlier in the case, the parties entered a stipulated order in which they agreed that ESI collection would be done under the supervision of counsel.  (ECF No. 13). EEOC contends that Defendant is not following this agreement.  According to EEOC, Defendant's counsel sent search terms to Defendant's IT department,

which then conducted searches manually in Microsoft Outlook.  Counsel is

required to test the accuracy of the client's response to discovery requests.  *Lyman*

*v. Ford Motor Co.*, 344 F.R.D. 228, 230 (E.D. Mich. 2023).

Defendant says there is nothing improper about its collection methods.

Counsel interviews clients and those with potential information, identifies potential

custodians, and instructs them to pull documents.  Counsel then asks follow-up

questions based on information throughout the case.  (ECF No. 22, PageID.246).

It insists that it is not conducting unchecked discovery.  (*Id.* at PageID.248).

"Since at least 2006, counsel have been required to take an active,

affirmative role in advising their clients about the identification, preservation,

collection, and production of ESI."  *Waskul v. Washtenaw Cnty. Cmty. Mental*

*Health*, 569 F. Supp. 3d 626, 636 (E.D. Mich. 2021) (quoting *DR Distributors,*

*LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 926 (N.D. Ill. 2021)).

Thus, counsel cannot merely rely on custodians to self-collect ESI.  Rather,

counsel must "test the accuracy of the client's response to document requests to

ensure that all appropriate sources of data have been searched and that responsive

ESI has been collected—and eventually reviewed and produced."  *Id.*

Defendant's description of its ESI collection efforts comes close but does

not mention "testing the accuracy" of the response.  It is unclear whether "asking

follow-up questions" includes testing the accuracy of the search.  If Defendant's

16

counsel is not testing the accuracy of the searches, counsel must do so unless it is supervising the search in-person.  Failure to do so may result in sanctions, including monetary sanctions.  Should further issues arise concerning self-collection, the parties are directed to contact chambers to schedule a status conference.

      3.     Documents Discovery

The disputes about Defendant's responses to documents requests boil down to a dispute about search terms and custodians.  EEOC wants Defendant to conduct searches of more custodians (17 in total) and using a longer search term list (30 search terms).  Defendant says custodians should be limited to those who had some involvement in the conduct at issue and the search terms should accompany other terms and connectors to avoid overly broad and unduly burdensome searches.

One issue is the relevant period for this discovery.  Defendant insists that the relevant period includes the time that Plaintiff Farran was an employee and during her lay-off (beginning January 1, 2018), but ends when the two relevant facilities (Toledo and Taylor) permanently closed in February 2021.  EEOC seeks documents from 2018 through 2023.  Defendant insists it need not produce documents past closure because once the buildings closed, there was no work for anyone, so Plaintiff would not have worked nor would she have a right to pay for those years.

At the hearing, counsel for EEOC agreed to limit discovery about work availability to the period from January 1, 2018, to the closures.  EEOC does not agree to similarly limit requests regarding Plaintiff's complaints or the EEOC investigation because communications about the EEOC complaint are relevant and would have occurred during the time the facilities were closed.

The Court agrees with the EEOC—documents requests about work availability will be limited in time to January 1, 2018, until the facilities closed.  All other requests have a relevant period of January 1, 2018, to the filing of this lawsuit.

The next issue to address is Defendant's assertion of burden and the constraints of the European Union's General Data Protection Regulation ("GDPR").  Defendant maintains its server in Germany.  The GDPR restricts distribution of personal data, such as email, to countries outside the EU with less stringent personal data protection laws, like the United States.  In briefing, it appeared that any documents Defendant intended to provide in discovery had to pass through an approved GDPR vendor.  Counsel clarified the impact of the GDPR: Defendant can produce any relevant, responsive documents through otherwise normal collection and response practices.  It could produce irrelevant or unresponsive emails only after an approved vendor undertakes the search for the emails and reviews the emails, which would cost between $38,000 to $64,000

18

USD.[3]  (ECF No. 40-2, PageID.53-34).  This is so because Defendant's counsel

needs to be able to certify by affidavit that the requests were relevant here and not

overly broad.

EEOC insists that the Court can order Defendant to produce the emails, even

if doing so conflicts with the GDPR.  EEOC argues that shifting the cost of the

search is inappropriate because Formel D chose to store its employees' emails in

Germany instead of the United States.  (ECF No. 43, PageID.555-56).  EEOC

insists that the cost, as stated in the Sauer declaration, is proportional to the needs

of the case.  EEOC gives examples of deficient production—for instance, Wilson,

a custodian, emailed directly and was friends with people who participated in the

alleged discrimination.  Defendant produced 21 emails sent by Wilson.  The search

term hit report includes thousands of Wilson emails, including those containing

"Alicia," "Farran," and "morning report" in them that have not been produced.

(ECF No. 43, PageID.562).  Thus, EEOC seeks an order compelling Defendant to

produce all emails containing any of the search terms in EEOC's terms list.

"It is well settled that [foreign 'blocking'] statutes do not deprive an

American court of the power to order a party subject to its jurisdiction to produce

---

[3] This information comes from the "declaration" of one of Defendant's IT employees.
The document is unverified and not signed under penalty of perjury.  Counsel explained that in
Germany, where this was created, declarations need not be signed under penalty of perjury and
there are no notary publics.  That may be, but this litigation is conducted in the United States
where verification is required.  This document has no evidentiary value.

evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 n. 29 (1987). "As the party seeking to rely on German and European Union law, it is [the defendant's] burden to demonstrate that these laws bar production of the documents at issue." *BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*, 2014 WL 3965062, at *4 (N.D. Cal. Aug. 13, 2014). The factors to be considered are: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *Aerospatiale*, 482 U.S. at 544 n. 28.

As an initial matter, the Court is unconvinced that Defendant must resort to the use of a GDPR-approved vendor to conduct the searches of emails not yet produced. Defendant's counsel said this search method was necessary because, essentially, he would be unable to attest that the documents are relevant to this lawsuit and the requests are not overly broad. The Court is not persuaded by this position because, for one thing, if the Court rules that the requests are relevant and not overly broad, it would seem that would be sufficient to meet Defendant's

20

counsel's burden.  To rule otherwise would be antithetical to the Rules of Civil

Procedure governing this case because doing so gives the party opposing a

discovery request the power to decide the relevance and proportionality of the

request.  The Court is unaware of any authority granting such power.

Second, the Court finds the requests (the search terms and custodians)

relevant and proportional to the needs of the case, obviating the need to go through

a GDPR vendor.

The EEOC attached its updated list of requested search terms to the joint

statement of unresolved issues.  EEOC wants several words or terms searched

without connectors, such as "Alicia," "Farran," "daily projection," and "morning

report."  (ECF No. 42-1).  The EEOC explained why some of these terms should

not be attached to any connectors.  For example, as for "Alicia," EEOC insists

Plaintiff's name alone should be searched because some emails might discuss

Alicia without using her last name.  Examples of such emails are attached at ECF

No. 43-4.

EEOC's example emails are the reason the Court will require each of the

"Alicia," "Farran," "Farrah," and "Farron" search terms to be accompanied by at

least one connector related to the claims here, such as "EEOC," or "complain!," or

"retaliation," or "harassment," for example.  For instance, in a November 21, 2018,

email, "Alicia" is written in the subject line and in the body.  The email is about

her complaints.  The word "harassment" is in included in the body.  (*See* ECF No. 43-4, PageID.594).  In the few emails that have only "Alicia" and no other case-relevant words, that email responds to one with other case-relevant words.  Any originating and response emails with "Alicia" that do not concern this case are irrelevant.  To avoid adding time and expense to the search, the Court requires Plaintiff's name search terms be accompanied with at least one connector.  That said, **Defendant must produce emails sent in response to an email containing search terms, even if that responsive email does not contain a search term**.  To illustrate this, if the originating email contains "Alicia" and "harassment," but the response emails contain only "Alicia" or are about this case but do not contain a search term, these reply emails are relevant and must be produced.  Limiting the emails to require additional connectors narrows the scope so that the emails are not over broad.

As mentioned, EEOC also wants emails containing the work availability terms such as "daily projection" and "morning report" to be searched without connectors.  Its reasoning is that work report documents that underlie the emails do not tell the whole story about what work was available each day.  This is because the persons involved in the reports would communicate about the work, whether to change the report, or if information is missing from the report, for example.  So the

whole picture of whether work was available on a given day is not told by reference to the actual work report itself.

Defendant insists that emails about work reports are duplicative and unresponsive to discovery requests.

The Court is not convinced that the only relevant information about work availability comes from the work reports themselves, considering it appears that employees would have discussions about the reports and make changes after the reports are published.

The other dispute over work availability emails is whether the search terms should have connectors to limit them to the Taylor and Toledo locations, because available work at other locations is irrelevant. Defendant says such searches are overly broad and unduly burdensome because some custodians had responsibility for additional facilities, so the search terms will pull emails for irrelevant facilities. (ECF No. 42, PageID.545). EEOC agrees that other facilities are irrelevant, but argues that including "Taylor" or "Toledo" as connectors would not help because some emails do not include those cities.

The Court will require production of work availability emails but will limit work availability emails to those that include "Taylor" or "Toledo," and all reply emails related to work availability at those facilities, even if the reply emails contain none of the search terms. Responsive emails will be limited to January 1,

2018, up to the closure of the facilities.  With these limitations, the searches are for relevant emails and are not overly broad, so Defendant should not need to use a vendor for their collection.

The parties dispute the addition of four custodians: Shanica Wilson, Adrian Johannsson, McLeod Soper, and Gottfried Gschnitzer.  Defendant has not run searches for these custodians.  With respect to Shanica Wilson, EEOC agrees to limit the search terms to "Alicia" "Farran" "Farrah" and "Farron."  (ECF No. 42, PageID.544).  Defendant contends that search all the search terms for all the requested custodians is overly broad without limitations.

The Court has now added limitations to the "name" and work availability search terms.  In light of the spoliation of key custodians' emails and work phones and laptops, the Court finds that searching these four other custodians for responsive emails with the limitations addressed above is not overly broad or unduly burdensome.  Responsive emails will contain information relevant here, so again, the GDPR should not be an issue.

In sum, Defendant is **ORDERED** to use the EEOC's search term list attached to the joint statement of unresolved issues with the limitations addressed here, and must search the email accounts of the custodians the EEOC has requested.  The motion to compel (ECF No. 20) is **GRANTED IN PART**, and held in abeyance with respect to the attorney-client privilege issue.

24

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made.  Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.


Date: September 12, 2024          s/Curtis Ivy, Jr.
                                  Curtis Ivy, Jr.
                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on September 12, 2024.


                                  s/Sara Krause
                                  Case Manager
                                  (810) 341-7850